UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
UNITED STATES OF AMERICA  :
: 10 CR 654 (HB)
- against -  :
: OPINION & ORDER
DOMINICK CAROLLO, STEVEN GOLDBERG,  :
and PETER GRIMM,  :
:
Defendants.  :
:
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

      This action is before the Court upon the motions of non-party Daniel Naeh to quash two of defendant Steven Goldberg's Rule 17(c) subpoenas. The defendant no longer seeks enforcement of the second subpoena. The March 9, 2012, motion to quash the second subpoena is therefore denied as moot. For the following reasons, the February 22, 2012, motion to quash the first subpoena is granted in part and denied in part.

## BACKGROUND

      The defendants in this case are charged with a conspiracy to commit fraud by manipulating municipal bond auctions. Non-party Naeh is an unindicted coconspirator who is scheduled to testify. Between the period of late 2006, when Naeh was likely alerted to the government's investigation of his former employer, and early 2010, when Naeh pleaded guilty and entered into a cooperation agreement with the government, Naeh transferred money from the United States to banks in Switzerland. It is Naeh's bank statements, tax returns, and other documents that relate to these transfers that are the subject of the first subpoena, returnable at the start of trial when Naeh is scheduled to testify.

      The government was alerted to the transfers in mid-2009. While the government has expressed interest in obtaining from Naeh the same documents that Goldberg now seeks in his subpoena, the government has yet to explicitly request them. The government has turned over to Goldberg as *Giglio* material an internal government document called a Suspicious Activity Report and would be required to turn over the subpoenaed materials should it obtain them.

## DISCUSSION

1

a. *Rule 17(c)*

Rule 17(c) of the Federal Rules of Criminal Procedure provides that a "subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). Rule 17(c) is "not intended to provide a means of discovery for criminal cases," and the scope of the rule is confined to "evidentiary" materials. *See United States v. Nixon*, 418 U.S. 683, 698–99 (1974). Under *Nixon*, a party seeking the production of the documents must demonstrate that the materials are: (1) relevant; (2) admissible; (3) specifically identified; and (4) not otherwise procurable. *United States v. Vasquez*, 258 F.R.D. 68, 72 (E.D.N.Y. 2009). The specificity requirement is designed to fulfill Rule 17's dictate that the subpoena not be "unreasonable or oppressive." Missing any of these elements is fatal to a Rule 17 subpoena. *Nixon*, 418 U.S. 683.

The requested materials, while not relevant to the charges in the indictment, are relevant to Naeh's credibility were he to take the stand. Furthermore, the subpoena identifies a discrete number of documents that relate to Naeh's movement of funds to his accounts in Switzerland and the payment of taxes on those funds for the years 2007 and 2008. The subpoena thus contains the necessary level of specificity—normally the more difficult hurdle in a Rule 17(c) subpoena. Defendant Goldberg must still show that the materials are evidentiary under *Nixon*, that is, that they are admissible.

Impeachment materials may be the proper subject of a subpoena; however, it is sometimes more difficult for such a proponent to satisfy the *Nixon* requirements. *See id.* at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."). "This is because the admissibility prong of Rule 17(c) cannot be fully assessed until the corresponding witness testifies at trial." *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (citing *United States v. Liddy*, 478 F.2d 586, 587–88 (D.C.Cir.1972)). While the request may not be for materials that might *lead* to admissible evidence, as under the discovery rules, the request can be for materials that will themselves *ripen* into admissible evidence. *See United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) ("[I]t will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents; therefore, if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied."); *accord United States v.*

*Zhiqiang Zhang*, CR 10-00827 LHK HRL, 2012 WL 195509 (N.D. Cal. Jan. 23, 2012).

Naeh is correct that were these documents relied on as extrinsic evidence of prior conduct and Goldberg sought only to attack his character for truthfulness, they would fall victim to the *Nixon* requirements. Fed. R. Evid. 608(b). Naeh has not been convicted of tax fraud, and the Suspicious Activity Report is simply a signal to government agencies that there may be improper activity. This is too narrow a view, however, of what these documents are or what they can provide in terms of Goldberg's defense. Goldberg will rely on the documents to show Naeh's activities and intentions during the period of his cooperation with the government in the investigation of the conspiracy to which Goldberg is alleged to be a part. *See United States v. Frank*, 208 F.3d 204 (2d Cir. 2000) (unpublished decision) ("[E]xtrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground."). This goes beyond simply demonstrating prior conduct in order to attack Naeh's character for truthfulness and may suggest bias or a motive on the part of Naeh to cooperate with the government on the conspiracy count in order to protect assets that arose out of that conspiracy, to protect himself from indictment here, or to otherwise guard against additional charges for other crimes. *See United States v. Orena*, 883 F. Supp. 849, 869 (E.D.N.Y. 1995) ("[T]he subpoenaed tax returns . . . may reflect financial transactions conducted by [the testifying witness] in preparation for his decision to cooperate with the government, and . . . these documents may therefore illuminate the factors which led [the witness] to become a prosecution witness and the benefits he obtained by doing so. Accordingly, the 'evidentiary' prong of *Nixon* has been satisfied.").

Other *Nixon* factors also support allowing these documents to be subpoenaed. *See United States v. McClure*, CRIM.A. 10-028, 2010 WL 3523030 (E.D. La. Sept. 1, 2010). The Government will rely heavily on the testimony and credibility of its cooperating witnesses, including Naeh. Goldberg has no reasonable means of obtaining these documents but through a subpoena.[1] The government is aware of these documents and their relation to possible tax fraud—and has even indicated an interest in obtaining them—but has never requested them. *See* Goldberg's Opp'n 5–6. Goldberg will not be able to properly prepare for impeachment of the testifying witness without the requested information, for the documents are likely to have had a

---

[1] Requests 4(3) and 6(3) which seek "correspondence with the United States government, including but not limited to the Department of Justice, Antitrust Division" can be obtained from the government and are therefore quashed.

3

role in prompting Naeh's decision to cooperate and his decision to plead guilty and testify. And the documents requested are narrowly confined. *See generally United States v. Stein*, 488 F. Supp. 2d 350, 365 (S.D.N.Y. 2007) ("[I]t is vitally important never to let the frequent repetition of a familiar principle obscure its origins and thus lead to mindless application in circumstances to which the principle never was intended to apply. . . . *Nixon* should not so readily be divorced from the concerns that produced it."). There is no danger here of the broad language in Rule 17(c) swallowing the Rule 16 limitations on the discovery available to criminal defendants.

### b. Attorney-Client Privilege and Work Product

Naeh further argues that certain of the requests include correspondence with his tax counsel and are therefore protected by the attorney-client privilege. Naeh argues that the communications were kept confidential and were made with the purpose of obtaining legal advice concerning Naeh's tax returns and tax reporting obligations. *See* Naeh's Supp. 5 (citing *United States v. Constr. Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996)). Goldberg responds that Naeh both waived the privilege when he discussed these communications with the government in October 2009 and is prevented from asserting the privilege to conceal illegal conduct pursuant to the crime-fraud exception. *See* Goldberg's Opp'n 9–12. Goldberg's arguments do not extend to the period following the transfers or the interview with the government. In light of Naeh's assertion that there are no responsive documents for this earlier period, *see* Naeh's Reply 2–3, the issue is moot and Goldberg's request will be of no avail. To the extent there are responsive documents claimed to be privileged for any subsequent period still covered by the subpoena, Naeh shall comply with the procedures set forth in the subpoena.

## CONCLUSION

Based on the foregoing, the February 22, 2012, motion to quash the first subpoena as it is directed to Requests 4(3) and 6(3) is granted. The motion is otherwise denied; Naeh shall produce at trial the remaining documents in accordance with the subpoena. The Clerk of the Court is instructed to close the motions and remove them from my docket.

**SO ORDERED.**

April 9, 2012
New York, New York

HAROLD BAER, JR.
United States District Judge

4